UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARVIN BELSER,

    Plaintiff,

v.                                                      Case No. 2:15-CV-199
                                                         HON. ROBERT HOLMES BELL

BRENDA JAMES, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Marvin Belser, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action on December 21, 2015, pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. After screening, Plaintiff's remaining claims are against Defendants: James, Austin, Rose, Mliko, Caron, and Napel. ECF No. 5. Plaintiff seeks declaratory relief and punitive damages.

Plaintiff claims that Defendants violated Plaintiff's Eighth Amendment rights when they were deliberately indifferent to his medical needs. Defendants Austin and Rose filed a motion for summary judgment based solely on exhaustion (ECF No. 45) on July 8, 2016, as did Defendants Caron, James, Mliko, and Napel on July 13, 2016 (ECF No. 49). Plaintiff filed a response (ECF No. 53). Defendants Austin and Rose filed a reply (ECF No. 55). The matter is now ready for a decision.

The following are the events in question viewed in the light most favorable to Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a

summary judgment motion are accepted as true)). Plaintiff's personal electric wheelchair was taken from him by MDOC medical staff and given to another inmate that was discharged from prison, and Plaintiff was given a non-electric wheelchair. PageID.4. However, his non-electric wheelchair was taken away from him by staff on March 1, 2014. PageID.4. In addition, his O2 concentrator was misplaced by staff. PageID.4.

On October 7, 2014, Plaintiff was transferred to Marquette Branch Prison (MBP) with a wheelchair. PageID.4. Plaintiff met Defendant James at MBP, and Defendant James told Plaintiff that his wheelchair would be taken away. PageID.4. Plaintiff was wheeled to segregation and was forced to crawl from the wheelchair to his cell because he cannot stand or walk. PageID.4. Plaintiff has pain in his left side, spine, neck, foot, and chest. PageID.4. Also, Plaintiff's ability to speak and see is declining. PageID.4. Plaintiff is not being given pain medication, and he has not had a shower since March 1, 2014. PageID.4. Moreover, Plaintiff stated that he was attacked by three other inmates after he requested to be placed in protective custody. PageID.4.

After October 13, 2014, Defendant Dr. Austin went to see Plaintiff and Plaintiff explained his medical issues to him. PageID.4. Defendant Austin prescribed Plaintiff some pain medication, but told Plaintiff there was nothing else that could be done. PageID.4.

Later on, Defendant Nurse Practitioner (NP) Rose saw Plaintiff at his cell and told Plaintiff that his medications would be stopped if he did not comply with her orders to stand up, because Plaintiff cannot stand, his medications were stopped. PageID.4-5. In addition, Defendant Nurse Mliko would not order pain medications for Plaintiff after they were prescribed by a doctor. PageID.5. Defendant Mliko told Plaintiff, too, that Defendant James said if Plaintiff

did not walk to see the doctor, that his medications would not be reordered. PageID.48.

Defendant Napel went to Plaintiff's cell, and Plaintiff explained to him that he could not stand or walk and that he had to crawl and sleep on the floor, but Defendant Napel did not help Plaintiff. PageID.6-7. Plaintiff contends that he wrote several grievances to Defendant Caron, and kites to Defendant Napel, but they refused to respond or process these requests. PageID.23.

Based on these occurrences, Plaintiff asserts that Defendants violated his Eighth Amendment rights. ECF No. 1. Plaintiff seeks legal redress before this Court for these alleged violations of his constitutional rights

Presently before the Court are Defendants' motions for summary judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad*, 379 F.3d at 416 (citing *Adams*, 31 F.3d at 382). However, a mere

scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Notably, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court could not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff's remaining claims against Defendants raise issues under the Eighth Amendment. Defendants' sole argument in the motions for summary judgment is that Plaintiff did not exhaust his administrative remedies with regard to these claims, meaning Plaintiff's present claims should be dismissed.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action under 42 U.S.C. § 1983 must exhaust his available administrative remedies. A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 217-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Supreme Court held in *Woodford* that the PLRA exhaustion requirement requires "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Woodford*, 548 U.S. at 90-95. Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones*, 549 U.S. at 212-216.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control ECF No. 45-2 and 50-1 at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely

response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

According to the MDOC Prisoner Step III Grievance Report, Plaintiff filed nine grievances from March 1, 2014 (when the events giving rise to this action began), to December 21, 2015 (when he filed this lawsuit). PageID.206-211. Defendants provided the Court with copies of the nine grievances. ECF No. 45-1. Because all of the grievances provided have completed the three Steps, the Court will review the nine grievances only to determine whether the issues raised in these grievances apply to Plaintiff's present case.

In grievance SRF-14-08-1184-28a, Plaintiff asserted that he sent ten medical kites to Dr. Grabowski regarding his inability to stand or walk, his attack by three inmates, and the fact that Dr. Broskowski took his wheelchair away. PageID.238. Because this grievance does not name any of the Defendants, as required for proper exhaustion under the MDOC grievance

policies (ECF No. 45-2 and 50-1 at ¶ R), it does not apply to this case.

Grievance SRF-14-07-1043-28e indicates that Plaintiff sent eight kites requesting a wheelchair, permanent accommodations, an incontinent garment, and a diabetes snack bag, but that he received no response. PageID.215. Plaintiff stated that unknown medical staff were aware that he cannot walk and that he has to crawl on the floor, but he has not received any help. PageID.215. Plaintiff indicates that this is being done because he is African American. PageID.215. Because Plaintiff does not name any of the Defendants in this grievance, this grievance is not relevant to this case.

In grievance SRF-14-06-0913-28c, Plaintiff stated that he sent a kite to see a doctor because he needs a wheelchair, was attacked by three inmates, cannot open his left eye, cannot walk or stand, and he has not showered or shaved in three and a half months; however, he did not receive a reply to this kite. PageID.220. Because Plaintiff does not name any of the Defendants in this grievance, this grievance does not apply to his present case.

Grievance SRF-14-08-1349-28c states that on August 23, 2014, Plaintiff had to crawl to his unit and eat on the floor, and that he was attacked by three inmates on March 1, 2014. PageID.242. Plaintiff raised these issues against Susan McCauley, Josh Buskirk, Dr. Grabowski, and Corrections Officer Oliver. PageID.242. Since none of these people are Defendants in this action, this grievance is irrelevant to this case.

Grievance MBP-14-08-1346-28a states that Plaintiff cannot stand or walk, and that he was attacked by inmates on March 1, 2014. PageID. 246. Because Plaintiff does not name any of the Defendants in this grievance, it does not apply to this case.

In grievance URF-14-03-0955-28e, Plaintiff raises claims against Dr. Brostoski,

Dr. Borgerding, and Melissa LaPlant with regard to inadequate medical treatment. PageID.223, 225, 227. Because none of these people are Defendants in Plaintiff's present case, this grievance is irrelevant.

Grievance RMI-14-05-1127-28e indicates that Plaintiff sent a medical kite for a wheelchair and to be transferred to an assisted living facility, but he did not receive a response. PageID.233. Because this grievance does not name any of the Defendants, it is inapplicable to this case.

In grievance SRF-14-09-1458-27z, Plaintiff states that he requested to see a lieutenant or captain regarding stolen property, but no one helped him. PageID.250. Because Plaintiff's claim of stolen property was dismissed on screening, this grievance does not apply to Plaintiff's present action.

Finally, in grievance SRF-14-09-1457-12f, Plaintiff states that he filed a fourth medical kite on September 4, 2014, requesting that his medications be refilled, but he was told by unnamed medical staff that he was faking. PageID.255. Because Plaintiff does not name any of the Defendants in this grievance, it is irrelevant to his case.

Upon review of Plaintiff's nine grievances, it is clear that none of the nine grievances that Plaintiff filed during the relevant time frame apply to this case. Therefore, despite the Court's obligation to construe handwritten *pro se* documents liberally, I recommend that Plaintiff's claims against Defendants James, Austin, Rose, Mliko, Caron, and Napel be **DISMISSED**.  Fed. R. Civ. P. 56; *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim

undoubtedly contains no facts to support its request for relief).

In light of the foregoing, this Court concludes that Defendants' Motions for Summary Judgment (ECF No. 45, 49) should be **GRANTED** and Plaintiff's case should be **DENIED with PREJUDICE**.

**NOTICE TO PARTIES**: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); W.D. MICH. LCIVR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Date:   August 12, 2016                                          */s/ Timothy P. Greeley*
                                                                                HON. TIMOTHY P. GREELEY
                                                                                UNITED STATES MAGISTRATE JUDGE